MARY'S OPINION HEADING 






                                                                                    NO. 12-03-00072-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
LARA INGARGIOLA PARKS,                         §                 APPEAL FROM THE 173RD
APPELLANT
 
V.                                                                         §                 JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                        §                 HENDERSON COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            A jury found Lara Ingargiola Parks (“Appellant”) guilty of possession of a controlled
substance, methamphetamine, in an amount less than one gram. The trial court assessed Appellant’s
punishment at confinement in a state jail facility and a $10,000 fine. In the three issues presented,
Appellant contends that the trial court erred in allowing an undisclosed witness to testify, that she
was denied her Sixth Amendment right to confront the witness against her, and that the evidence was
legally and factually insufficient to support the verdict. We affirm.
 
Background
            On January 6, 2001, Deputy Botie Hillhouse (“Deputy Hillhouse”) of the Henderson County
Sheriff’s Department stopped a Jeep Cherokee vehicle driven by Appellant for no license plate light. 
Appellant was the vehicle’s only occupant. When Deputy Hillhouse reached her vehicle and
introduced himself, Appellant was crying and shaking. He asked her if she was okay. She told him
she knew that he had stopped her because she was married to Johnny Parks who had been arrested
the week before on a narcotics charge. After Appellant produced her driver’s license and proof of
insurance, Deputy Hillhouse asked for and received her permission to search her car. She got out
of the vehicle and stood between it and the patrol car. As Deputy Hillhouse began his search, she
asked him to hand her the cigarette pouch lying on the front passenger seat. Before handing it to her,
he looked in the pouch. There along with the cigarettes, he discovered a small square of tinfoil
containing what he believed was a methamphetamine tablet. When asked by Deputy Hillhouse,
Appellant said the purse was hers, but she denied any knowledge of the pill. Deputy Hillhouse
arrested her for possession of methamphetamine.
            Appellant was stopped in an area known for heavy drug trafficking. Appellant told Deputy
Hillhouse that she had just come from Lynn Jernigan’s (“Jernigan”) house where she had gone to
get money to pay for her husband’s bail bond.
            Before trial, the State gave Appellant notice that Shanna Hampton (“Hampton”), a
Department of Public Safety (“DPS”) chemist, was a prospective witness. One week before trial,
the State discovered that Hampton had returned to college and no longer worked for the DPS. 
Without notice to Appellant, the State sought to substitute Lynette Feuquay (“Feuquay”) as a witness
in the place of Hampton. Feuquay was the supervisor of the DPS crime laboratory in Tyler, and she
had been Hampton’s supervisor while Hampton was employed at the DPS laboratory. Over
Appellant’s objection, the trial court allowed Feuquay to testify to the results of the tests of the
suspected contraband and to express her opinion that it was methamphetamine.
            Appellant testified that at the time she was arrested she did not know the pill was in the
cigarette pouch and that she had not put it there, but that she was told later that Robin Junell
(“Junell”) had put it there. Charles Ford told the court that he had seen Junell place the pill in
Appellant’s cigarette pouch. Christi Matthews testified that Junell had admitted to her that she had
placed the methamphetamine in Appellant’s purse without Appellant’s knowledge. Junell, testifying
as a rebuttal witness for the State, said that both she and Appellant were together at the Jernigan
house shortly before Appellant’s arrest. She recalled that Appellant had asked her for drugs, and that
she had told Appellant she could have the drugs lying on some foil on the television. She did not
see Appellant put the drugs in her purse, but she noticed later that they were no longer on the
television.
 
 
Undisclosed Witness
            In her first issue, Appellant contends “[t]he trial court abused its discretion by allowing an
expert witness not previously disclosed to [Appellant] to testify regarding the testing of the alleged
controlled substance.”
Standard of Review and Applicable Law
            Notice of the State’s witnesses shall be given upon request. Young v. State, 547 S.W.2d 23,
27 (Tex. Crim. App. 1977). The trial court’s decision to allow a witness to testify who was not listed
on the State’s witness list provided to the defendant is reviewed under an abuse of discretion
standard. See Nobles v. State, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992). Among the factors
considered by a reviewing court in determining whether there has been an abuse of discretion are (1)
a showing of bad faith on the part of the prosecutor in failing to disclose the witness’s name before
trial, and (2) whether the defendant could have reasonably anticipated that the witness would testify
although his or her name was not given to the defendant. Id.; Stoker v. State, 788 S.W.2d 1, 15
(Tex. Crim. App. 1989).
Analysis
            When the State called Feuquay, Appellant informed the court that Feuquay was not named
in the witness list provided her pursuant to the court’s standard discovery order. The prosecutor told
the court that he had learned a week before trial that the expert named, Shanna Hampton, had
returned to college and no longer worked at the DPS crime laboratory. The prosecutor stated that
Feuquay was the supervisor of the DPS laboratory; that she had been Hampton’s supervisor; and that
he intended to introduce the records of the tests conducted on the pill taken from Appellant through
Feuquay as the custodian of the business records of the DPS laboratory. The prosecutor also told
the court that he intended to ask her opinion, based on her examination of the records, whether the
substance seized was methamphetamine.
            Appellant objected to Feuquay’s being allowed to testify because she was not the expert
designated by the State. The court overruled Appellant’s objection insofar as it applied to the proof
of the tests through Feuquay’s testimony as custodian of the DPS laboratory records. But he reserved
a decision on the question of whether she could, as an expert, testify whether the pill was
methamphetamine. After proof of the tests as business records and their receipt in evidence, the
prosecutor attempted to elicit Feuquay’s opinion as an expert. Appellant renewed her original
objection, which was overruled. Feuquay testified that, in her opinion, the pill was
methamphetamine as shown in the laboratory records.
            Appellant argues that the prosecutor’s admission that he knew a week prior to trial that he
would call Feuquay because Hampton no longer worked at the laboratory demonstrates the
prosecutor’s bad faith, the first of the Stoker factors. Black’s Law Dictionary defines “bad faith”
as “dishonesty in belief or purpose.” Black’s Law Dictionary 134 (7th ed. 1999). Although the
prosecutor knew a week before trial that Hampton no longer worked for the DPS, we cannot agree
that the prosecutor’s failure to notify Appellant that Feuquay would be called in Hampton’s place
was sufficiently egregious to be characterized as bad faith. The prosecutor’s failure was negligent,
but nothing in the record suggests that the failure was the product of a deliberate or dishonest intent
or proceeded from an improper motive. The prosecutor did not act in bad faith.
            The second factor a reviewing court must consider in determining if the trial court abused
its discretion is whether the defendant reasonably could have anticipated that the unnamed witness
would testify. Appellant argues that she did not and could not have anticipated that another witness
who had no personal knowledge of the testing would be called by the State. On appeal, Appellant
complains that it is impossible to cross-examine a business record. At trial, however, Appellant did
not urge a hearsay objection to the State’s introduction of the business records. She objected to the
business records on the ground that the State had failed to lay a proper predicate for their
introduction. The record shows that the State had laid the necessary predicate, and the trial court
properly overruled the objection.
            Appellant was obviously well prepared to cross-examine the State’s chemist. The record
reflects that Appellant conducted a detailed and probing cross-examination of Feuquay, asking her
much the same questions she would have asked of Hampton. Appellant could hardly have been
surprised by the content of the records or Feuquay’s testimony.
            Because we find that the State did not act in bad faith and that Appellant could have
accurately anticipated the content of the testimony of the substituted witness, we conclude that trial
court did not abuse its discretion in allowing Feuquay to testify. Appellant’s first issue is overruled.
 
Constitutional Claim
            In her second issue, Appellant contends she was denied her Sixth Amendment right to
confront and cross-examine Hampton, the laboratory technician who actually tested the alleged
controlled substance. During trial, Appellant urged no objection on constitutional grounds. When
the objection at trial is different from the complaint raised on appeal, nothing is preserved for
appellate review. Rezac v. State, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990). Appellant’s second
issue is overruled.
 
Legal and Factual Sufficiency of the Evidence
            In her third issue, Appellant argues that the evidence is legally and factually insufficient to
support the verdict.
Standard of Review
            The standard for the review of legal insufficiency claims is whether, after viewing all the
evidence in the light most favorable to the prosecution, any rational jury could have found all the
elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319,
99 S. Ct. 2781, 2787, 61 L. Ed. 2d 560 (1979); Margraves v. State, 34 S.W.3d 912, 917 (Tex. Crim.
App. 2000). In conducting a factual sufficiency review, the appellate court must sustain the verdict
unless a neutral review of all the evidence, both for and against the challenged finding, demonstrates
that the proof of guilt is so obviously weak as to undermine confidence in the jury’s determination,
or the proof of guilt, although adequate if considered alone, is greatly outweighed by contrary proof. 
Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).
Applicable Law
            In drug cases, the State must establish (1) that the defendant exercised care, custody, control
or management over a controlled substance, and (2) that the defendant knew that the contraband was
a controlled substance. Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). If the
defendant was not found in actual possession of the contraband, the State must show facts or
circumstances that link the defendant to the contraband in order to demonstrate that the defendant
was “conscious of his connection with it and [knew] what it was.” Id. The circumstances
connecting the accused to the contraband must be sufficient to show that the accused possessed it
knowingly, and that his connection with it was more than merely fortuitous. Id. Numerous links
have been held to connect an accused to the contraband. See, e.g., Hyett v. State, 58 S.W.3d 826,
830 (Tex. App.–Houston [14th Dist.] 2001, pet. ref’d); Chavez v. State, 769 S.W.2d 284, 288-89
(Tex. App.–Houston [1st Dist.] 1989, pet. ref’d). The number of factors present is less important
than the logical force of those factors, alone or in combination, in establishing the elements of the
offense. Collins v. State, 901 S.W.2d 503, 506 (Tex. App.–Waco 1994, pet. ref’d).
            In the instant case, Appellant was the driver and sole occupant of the vehicle where Deputy
Hillhouse found the drugs. The cigarette pouch containing the contraband lay on the front passenger
seat next to the driver. She asked for her cigarettes just as Deputy Hillhouse began to search her car. 
Appellant admitted that the cigarette pouch was hers. She was unusually agitated when Deputy
Hillhouse stopped her car in an area known for narcotics trafficking. She had just left the house of
a known drug dealer. While at that house, she had asked Junell for drugs. These facts and
circumstances more than suffice to connect Appellant with the contraband and demonstrate that she
possessed it knowingly.
            The jury was not persuaded by Appellant’s evidence that Junell put the methamphetamine
in her cigarette pouch without her knowledge. The trier of fact is the exclusive judge of the
credibility of the witnesses and the weight to be given their testimony, and the resolution of
conflicting testimonial evidence is solely within its province. See Whitaker v. State, 977 S.W.2d
595, 598 (Tex. Crim. App. 1998). Proof of Appellant’s guilt is not outweighed by contrary proof.
            The evidence is both legally and factually sufficient to support the verdict. Appellant’s third
issue is overruled. 
Conclusion
            Having overruled Appellant’s first, second, and third issue, the judgment of the trial court
is affirmed.
                                                                                                    BILL BASS 
                                                                                                            Justice
 
Opinion delivered May 28, 2004.
Panel consisted of Worthen, C.J., Griffith, J., and Bass, Retired Justice, Twelfth Court of Appeals, Tyler, sitting by
assignment.
(DO NOT PUBLISH)